IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRANDON RUIZ,

    Plaintiff,                    No. CIV S-09-0318 JAM GGH P

    vs.

DR. AKINTOLA, et al.,

    Defendants.                <u>FINDINGS & RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants Akintola and Naseer provided him with inadequate medical care following knee surgery. Pending before the court is defendants' December 3, 2009, summary judgment motion. After carefully considering the record, the court recommends that defendants' motion be granted.

II. <u>Summary Judgment Standards Under Rule 56</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On March 10, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. <u>Legal Standard for Eighth Amendment Claim</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. <u>Id.</u> at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id.</u> at 842, 114 S. Ct. at 1981.

/////

1         It is nothing less than recklessness in the criminal sense – subjective standard –
2 disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-842, 114 S. Ct. at
3 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn
4 that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837,
5 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk
6 of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at
7 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his
8 knowledge of a substantial risk of serious harm." <u>Id.</u> at 842, 114 S. Ct. at 1981. If the risk was
9 obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42, 114 S. Ct. at
10 1981. However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

11         Also significant to the analysis is the well established principle that mere
12 differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth
13 Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>,
14 662 F.2d 1337, 1344 (9th Cir. 1981).

15         Moreover, a physician need not fail to treat an inmate altogether in order to violate
16 that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir.
17 1989). A failure to <u>competently</u> treat a serious medical condition, even if some treatment is
18 prescribed, may constitute deliberate indifference in a particular case. <u>Id.</u>

19         Additionally, mere delay in medical treatment without more is insufficient to state
20 a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766
21 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is
22 no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing
23 <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-
24 1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends
25 to provide additional support for a claim of deliberate indifference; however, it does not end the
26 inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

IV. Undisputed Material Facts

At all relevant times plaintiff was a state prisoner housed at Mule Creek State Prison (MCSP). At all relevant times, defendant Naseer was a physician employed at MCSP. At all relevant times, defendant Akintola was a physician's assistant employed at MCSP.

On November 12, 2008, plaintiff had ACL reconstruction surgery on his left knee at the U.C. Davis medical center. Following plaintiff's return to MCSP, defendant Naseer reviewed plaintiff's chart and prescribed Ultram, a narcotic, for pain for two weeks. U.C. Davis had prescribed Norco for pain which was not available at MCSP.

Plaintiff was scheduled to undergo physical therapy on November 26, 2008, but due to a yard closure the appointment was cancelled. Plaintiff's first physical therapy appointment took place on December 15, 2008. Plaintiff received physical therapy on the following additional dates: February 4, 2009, February 10, 2009, February 20, 2009, February 23, 2009, March 9, 2009, April 1, 2009, April 13, 2009, May 19, 2009, May 22, 2009, June 1, 2009,

June 10, 2009, June 12, 2009, June 15, 2009, June 19, 2009, June 22, 2009, June 24, 2009, June 30, 2009, July 8, 2009, July 17, 2009, July 23, 2009, July 24, 2009, August 7, 2009, August 12, 2009, August 14, 2009, September 4, 2009, and September 16, 2009.

Plaintiff's physical therapy session scheduled for August 24, 2009, was cancelled due to yard closure. Plaintiff's physical therapy session scheduled for September 23, 2009, was cancelled because the physical therapist was ill. Plaintiff did not appear for physical therapy appointments on September 29, 2009, and October 9, 2009. It is the policy of the physical therapist not to reschedule appointments when the inmate misses two visits.

On December 17, 2008, defendant Naseer saw plaintiff for his 6 week follow-up following his surgery. Defendant Naseer saw plaintiff on two other occasions on January 9, 2009, and March 11, 2009, in connection with inmate grievances he had filed.

IV. Discussion

This action is proceeding on the original complaint filed February 4, 2009. Plaintiff alleges that following his knee surgery at U.C. Davis, he did not receive adequate pain medication nor sufficient physical therapy. Plaintiff alleges that when he returned to MCSP after his knee surgery, he did not see a doctor for fourteen days. The doctor plaintiff saw was not a regular A-Yard doctor. This doctor asked for help from defendant Akintola who, after looking at plaintiff's knee, stated "You only had knee surgery. There's nothing I can do for you. Knee surgeries are nothing." Plaintiff alleges that as a result of defendant Akintola's failure to act, he suffered pain so severe that he could not sleep. Plaintiff alleges that his pain medication was stopped on January 18, 2009, for an unknown reason.

Regarding physical therapy, plaintiff alleges that at the time he signed the complaint on January 22, 2009, he had received only one physical therapy session. Plaintiff also alleges that U.C. Davis ordered that plaintiff receive physical therapy immediately upon his return to MCSP, which did not occur.

\\\\\

As relief, plaintiff seeks money damages and injunctive relief in the form of an order for immediate physical therapy and pain medication. On March 31, 2009, the undersigned denied plaintiff's request for immediate injunctive relief contained in the complaint. On March 30, 2009, plaintiff filed another motion for injunctive relief regarding the issues raised in the complaint. On April 17, 2009, the district court denied this motion. Accordingly, because plaintiff's request for immediate injunctive relief has been addressed, it will not be considered in these findings and recommendations.

Defendants move for summary judgment regarding plaintiff's claim alleging inadequate pain medication on grounds that plaintiff was prescribed adequate pain medication. In his declaration filed in support of the pending motion, defendant Naseer states that immediately upon plaintiff's return to MCSP from U.C. Davis, he prescribed Ultram. Naseer declaration, ¶ 5. Ultram is a narcotic which is very effective for pain. Id. Although U.C. Davis had prescribed Norco for pain, this medication was not available at MCSP. Id. Defendant states that plaintiff was consistently prescribed Ultram until March 26, 2009, at which time he was prescribed Naprosyn by defendant Akintola, due to the fact that plaintiff had complained of stomach problems as a result of the Ultram being crushed. Id. Defendant Naseer also states that in most cases involving the same type of surgery plaintiff underwent, narcotics are usually prescribed for the pain for a period of 4 to 6 weeks after surgery. Id. In this case, plaintiff was prescribed Ultram for almost four months. Id.

Defendants provided no medical records in support of their summary judgment motion. However, attached to their March 23, 2009, response to plaintiff's motion for injunctive relief are relevant medical records as well as a declaration by defendant Naseer. The court will first discuss those records relevant to plaintiff's claim of inadequate pain medication.[1]

---

[1] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

According to these records, on November 12, 2008, plaintiff was prescribed Tramadol, aka Ultram, for two weeks. Court file doc. # 15-2, p. 19 of 77. The court cannot make out the name of the doctor who signed this prescription. On November 25, 2008, plaintiff was prescribed Tramadol for thirty days. Id., at 18 of 77. The court cannot make out the name of the doctor who signed this prescription. On December 17, 2008, defendant Naseer prescribed Tramadol for thirty days. Id., at 17 of 77. On January 30, 2009, plaintiff was prescribed Tramadol for two weeks. Id., at 16 of 77. The court cannot make out the name of the doctor who signed this prescription. In mid February 2009, plaintiff was prescribed Tramadol for three months by Christian Carter, physical therapist. Id., at 7 of 77, 23 of 77.

On January 14, 2009, plaintiff filed a grievance stating that his pain medication was to run out on January 18, 2009, and his next doctor line was not until February 6, 2009. Id. at 29 of 77. Plaintiff requested that his pain medication prescription be refilled. Id. A handwritten note under plaintiff's request states, "Refill 2/3/09...out of refills. Last fill on 1/3/09." Id. On January 23, 2009, January 25, 2009, January 27, 2009, and January 29, 2009, plaintiff filed grievances regarding not receiving his pain medication on January 18, 2009. Id. at 40-43 of 77. The responses to all grievances stated, "See note 2/6/09" and are signed by Christian Carter, Physical Therapist. Id.

On February 6, 2009, physical therapist Schlacter wrote a memorandum addressed to physical therapist Carter in which he stated that he believed that plaintiff's current knee pain was not related to his ACL surgery:

> I/M seen on 2/3 per UC 12/22 recommendation for continued PT. I/M's c/c is a searing pain in the pre-patellar area that will radiate into the tibia. One episode of descending off of his top bunk with an audible/painful "pop." He reports constant pre-patellar pain with episodes of the knee collapsing secondary to pain.
>
> On evaluation his problem does not appear to be associated with his ACL resconstruction. Rather it appears to be an acute patello-femoral syndrom with a positive patella femoral grinding test. The grind appears to be on the medial femoral condyle not the patella. In reviewing his surgical report (see attached) a mild chondromalacia was noted on the femoral condyle. According to the I/M the instructions from orthopedics at UCD was to "walk until it feels like the leg is

|   |   |
|---|---|
| 1 | going to fall off."  He did this and within a matter of weeks he was walking @ 20 laps daily (@ 6 miles).  He had minor patello-femoral discomfort but was tolerating it until his meds were d/c on or about 1/18.  Within 3 days he reported marked pain, stopped his walking program and was unable to work. |

going to fall off."  He did this and within a matter of weeks he was walking @ 20 laps daily (@ 6 miles).  He had minor patello-femoral discomfort but was tolerating it until his meds were d/c on or about 1/18.  Within 3 days he reported marked pain, stopped his walking program and was unable to work.

Assessment: An over use syndrome exacerbated by a patello-femoral trauma upon descending his top bunk.  The ACL reconstruction is excellent.

Plan: Per your approval, I believe the I/M would benefit from a cane for 30 days.  He has an appropriate knee support.  I believe that physical therapy can alleviate his symptoms and per UCD I will see him 1-2/wk. up to 8 visits with your approval.

Id. at 67 of 77.

In his declaration filed March 23, 2009, in opposition to the motion for injunctive relief contained in the complaint, defendant Naseer acknowledged that plaintiff's medication distribution record showed a period of time from January 18, 2009, to February 4, 2009, where there was no evidence that the pain medication was distributed to him.  Court file no. 15-2, p. 2 of 77, ¶ 4.  Defendant stated that he did not know the reason for this gap in the records.  Id.

Contrary to plaintiff's claims, the evidence above demonstrates that plaintiff was prescribed pain medication immediately upon his return from U.C. Davis by persons other than defendant Akintola.  Plaintiff does not explain how he could have suffered pain as a result of being denied pain medication by defendant Akintola when he had, in fact, been prescribed pain medication by other doctors.  Because plaintiff's claim that defendant Akintola denied him pain medication is contradicted by the undisputed evidence, defendants should be granted summary judgment as to this claim.

Plaintiff may be objecting to the fact that he was not prescribed Norco, as recommended by U.C. Davis.  However, plaintiff has presented no expert evidence that the narcotic he was prescribed, Ultram, aka Tramadol, was not medically warranted.  Accordingly, the court does not find that defendant Naseer acted with deliberate indifference when he prescribed Ultram.

\\\\\

Plaintiff alleges that defendants were responsible for his failure to obtain pain medication from January 18, 2009, to February 4, 2009. The medical records discussed above contain no evidence that either defendant was responsible for this temporary discontinuance of his medication. In addition, it appears from the records that plaintiff did not receive his medication during this time because he had used up the Tramadol before the time he could obtain a refill. For these reasons, defendants are entitled to summary judgment as to this claim.

Plaintiff's complaint filed February 4, 2009, contains no claims regarding the discontinuation of Tramadol on March 26, 2009, by defendant Akintola. For this reason, the court need not consider this claim in these findings and recommendations.

For these reasons discussed above, defendants are entitled to summary judgment as to plaintiff's claims alleging inadequate pain medication.

Defendants argue that they are entitled to summary judgment regarding plaintiff's claim of inadequate physical therapy on grounds that plaintiff received adequate physical therapy. Defendants cite the number of times plaintiff received therapy as stated in the section above discussion the undisputed facts.

Again, the medical records attached to defendants' March 23, 2009, motion for injunctive relief contain entries relevant to plaintiff's physical therapy. An entry in plaintiff's MCSP medical records dated November 12, 2008, states "unlock brace 3 times per day for heel glides 10-15 min quads, iso...contraction PT notified." Court file document 15-2, p. 26 of 77. An entry in plaintiff's medical records from November 25, 2008, states that he is "awaiting PT." Id. 50 of 77.

Defendants have provided no records regarding the amount of physical therapy plaintiff was supposed to receive. Rather, defendants have cited the number of occasions plaintiff received physical therapy and argue that it is adequate. Because plaintiff's complaint was filed February 4, 2009, and he clearly had PT after that date on frequent occasions, the undersigned is concerned only with his claim that he did not receive timely physical therapy from

the time he returned to MCSP until when he filed the complaint.

Thus, the issue is not the ultimate frequency of physical therapy visits (which seem more than adequate), but the timing of the first visits. Defendants fail to address the belated timing in plaintiff's first receipt of therapy, and in particular, the gap between plaintiff's first physical therapy session on December 17, 2008, and his second physical therapy session on February 4, 2009. While defendant Nasser states that there is no record from U.C. Davis that the physical therapy was to begin immediately, plaintiff's MCSP medical records from November 18, 2008, and November 25, 2008, indicate that plaintiff was "awaiting physical therapy," the reasonable inference of which is that therapy was to start fairly soon.

However, focusing on the burdens on summary judgment, as the non-moving party with the burden of proof, it is *plaintiff's* burden to raise an issue of fact with respect to each essential element. He has not done so with respect to causation and in linking the asserted untimeliness of the visits with the defendants in this case. The court is left to completely speculate whether the lack of timeliness had any significant deleterious effect on plaintiff's recovery. Indeed, based upon the PT memo previously quoted, it appeared that the problem for which plaintiff was ordered physical therapy, the ACL problem, had healed magnificently, and that plaintiff had suffered a *new* problem when carrying out the purported instructions of the UC medical personnel to "walk his legs off." Indeed, plaintiff would appear to need expert testimony to raise even an issue of fact. Moreover, the court cannot simply find, without any evidence, that the present defendants are the ones who had therapy scheduling duties when plaintiff arrived back at MCSP. As seen from the records, plaintiff was seen by other medical personnel as well.

The undersigned, according to the law, cannot merely assume that plaintiff might have something to say about these deficiencies at trial. Defendants are entitled to summary judgment on the therapy issues as well.

In his opposition, plaintiff argues that the physical therapy he received was not properly performed. This claim was not raised in the original complaint. Plaintiff may not

amend his complaint by way of his opposition to a summary judgment motion.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's December 3, 2009, summary judgment motion (no. 32) be granted in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 03/16/2010

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

ruiz318.sj(2)